UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
JEAN HO-RATH, individually and      )
p.p.a. Y.H., a minor; and           )
BUNSAN HO-RATH, individually and    )
p.p.a. Y.H., a minor,               )
                                    )
        Plaintiffs,                 )
                                    )
     v.                             )   C.A. No. 12-546 S
                                    )
TUFTS ASSOCIATED HEALTH             )
MAINTENANCE ORGANIZATION,INC.,      )
                                    )
        Defendant.                  )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Plaintiffs Jean and Bunsan Ho-Rath brought this action individually, and on behalf of their minor daughter Y.H., (together the "Ho-Raths" or "Plaintiffs") to clarify and enforce the terms of their former health insurance plan, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED, and Plaintiffs' motion for summary judgment is DENIED.

I.  Facts[1]

For years, the Ho-Raths have admirably persevered trying to obtain a treatment that they believe will cure their daughter from a chronic and potentially deadly disease. At the age of five, doctors diagnosed Y.H. with Alpha Thalassemia Hemoglobin H Constant Springing ("Thalassemia"). Put very simply, Thalassemia is a dangerous genetic blood disorder. To treat this disease, now fifteen-year-old Y.H. undergoes frequent blood transfusions. As a result of these treatments, Y.H. suffers from complications with respect to her liver and spleen. Y.H.'s doctors have indicated that her best chance for a cure is to undergo a bone marrow transplant using the umbilical cord stem cells of a sibling donor, who is a bone marrow match for Y.H., but who is not afflicted with Thalassemia.

If conceived naturally, a new child born to the Ho-Raths has approximately a 19% chance of being a match with Y.H., but has a 25% chance of being afflicted with Thalassemia. As a result, the Ho-Raths have sought to begin a pregnancy through a complex procedure that would create a disease-free matched donor.[2] This procedure is in vitro fertilization ("IVF") with

---

[1] The facts are drawn from the ample administrative record, which accompanied these motions. These facts are not in dispute.

[2] A sibling donor lowers the risks associated with this type of transplant to a mortality rate of less than 5%. The same

2

intraytoplasmic sperm injection ("ICSI") and pre-implementation genetic testing ("PGD") to ensure a disease-free, human leukocyte antigen ("HLA") bone marrow match for Plaintiffs' daughter.

Defendant Tufts Associated Health Maintenance Organization ("Tufts" or "Defendant") was the Ho-Raths' health insurance provider during the time period relevant to this case. From 2007 to 2012, Tufts repeatedly denied Plaintiffs' request for this complex procedure under the Ho-Raths' "Evidence of Coverage" (the "Plan").[3] In November 2010 and again in April 2011, Maximus, the independent appeals agent for the Rhode Island Department of Health ("DOH"), overturned these denials. The November 2010 ruling by Maximus permitted PGD with HLA testing and the April 2011 decision permitted PGD with HLA testing and IVF. Ultimately, following further review of the April 2011 decision, Maximus determined its decision on this appeal was incorrect and the DOH decided it should not have precedential value.

---

procedure using a non-sibling donor results in a mortality rate of 20%.

[3] The Ho-Raths withdrew from the Plan on August 31, 2012. Plaintiffs and Defendant argued vigorously about whether the Ho-Raths' leaving the Plan forecloses any remedy. Because this Court finds that Defendant did not abuse its discretion in interpreting the Plan, it need not address this question. Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013).

Still, Tufts paid for one round of IVF that resulted from Maximus's decision in April 2011. To date, Plaintiff Jean Ho-Rath has undergone five unsuccessful cycles of IVF, with most of these treatments paid for out of pocket by Plaintiffs and one round paid for by Defendant as a result of Maximus's decision.

In July 2011, Plaintiffs made another request for coverage of the same procedure. Tufts asked for more information about the request from the Ho-Raths' physicians, and when none was provided, Defendant denied the claim in September 2011. The Ho-Raths appealed this decision. Tufts and its peer review service examined this appeal and denied it, finding that Mrs. Ho-Rath did not have a diagnosis of infertility, and that PGD with HLA testing was specifically limited under the Plan. (AR-239.)[4] The Ho-Raths took a second level appeal with similar results. This time, Tufts and its peer review service denied the claim citing the earlier failed attempts at IVF and the peer review service's determination that Mrs. Ho-Rath's age and recent medical history suggested less than a 5% chance of success for a future round of IVF. (AR-312.) The Ho-Raths then appealed to Maximus. This time Maximus denied Plaintiffs' appeal in March 2012. Maximus found that Mrs. Ho-Rath did not meet the Infertility Guidelines of the Plan because: (1) she was infertile due to her age; (2)

---

[4] "AR" refers to the administrative record.

4

an additional round of IVF had a chance of success less than 5%; and (3) the prior failed IVF attempts precluded coverage. (AR-741.)

II. Standard of Review

Both sides agree that the proper lens through which to view this dispute is whether Defendant abused its discretion in denying Plaintiffs' claim. This standard of review applies "[w]hen an ERISA plan gives an administrator discretionary authority to determine eligibility for benefits or construe the plan's terms." D&H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011). Here, the Plan gives Tufts the "discretionary authority to construe the terms of the [plan], to make factual determinations and to make final and binding decisions about eligibility and claims." (AR-1.)

The administrator's reading need not be the best interpretation of the plan, nor come to the same conclusion the Court would if analyzing the plan on its own. D&H Therapy, 640 F.3d at 35. A benefit determination is within the discretion of the administrator as long as it is reasoned and supported by substantial evidence. Id. Evidence is substantial where it is "reasonably sufficient to support a conclusion." Desrosiers v. Hartford Life & Acc. Ins. Co., 515 F.3d 87, 92 (1st Cir. 2008) (quoting Wright v. R.R. Donnelley & Dons Co. Group Benefits Plan, 402 F.3d 67, 74 (1st Cir. 2005)). Where the administrator

5

both pays benefits and determines eligibility for claims, as is the case here, the court must consider this inherent conflict of interest in applying the abuse of discretion standard. Denmark v. Liberty Life Assur. Co. of Boston, 566 F.3d 1, 9 (1st Cir. 2009) (holding that "courts should review benefit-denial decisions for abuse of discretion, considering any conflict as one of a myriad of relevant factors"). This dual role is known as a "structural conflict[]" as opposed to a situation where a fiduciary's decision was in fact motivated by an actual conflict of interest. Id. at 5 n.2. Thus, Tufts's interpretation is afforded deference and should only be overturned if found to be an abuse of discretion, recognizing that the Court must be cognizant of the dual role being played by Tufts and the potential conflict this creates.

III. Discussion

    A.   Tufts's Interpretation of the Plan

Plaintiffs present an extremely sympathetic case. The administrative record makes plain that for the last six years, Y.H.'s parents have carried on undeterred in the face of repeated coverage denials, in hopes of obtaining a cure for their daughter. Irrespective of the sympathetic appeal of the Plaintiffs, however, the Court must remain mindful that the decision in this case revolves around contract interpretation. Because the insurance plan at issue affects the parties' rights

under ERISA, it is interpreted "in accordance with tenets of federal common law." Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995). Under this approach, unambiguous terms are construed in accordance with their plain and natural meaning. Chapman v. Supplemental Benefit Ret. Plan of LIN Television Corp., 723 F. Supp. 2d 485, 489 (D.R.I. 2010). Terms of a plan may be ambiguous where they are inconsistent on their face or "phraseology can support reasonable differences of opinion as to the meaning of the words employed and the obligations undertaken." Id. (quoting Smart, 70 F.3d at 178). Even where a plan is ambiguous, "the doctrine of contra proferentem does not apply to review of an ERISA plan construction advanced by an administrator given authority to construe the plan." D&H Therapy, 640 F.3d at 35.

Tufts's interpretation of the Plan denying coverage for IVF and PGD with HLA typing is reasoned and supported by substantial evidence, and therefore Tufts did not abuse its discretion in reading the Plan. The Plan states that it will pay for "COVERED SERVICES and supplies when they are MEDICALLY NECESSARY." (AR-761.) Thus, the plain language dictates that the question of whether a service should be approved hinges on both determinations – that a procedure is (1) covered and (2) medically necessary. (Id.; see also AR-802.) In pertinent part, the Plan defines covered services as those that are (1)

7

listed as covered services; (2) medically necessary; (3) consistent with state and federal law; and (4) consistent with Tufts's clinical guidelines in effect at the time services were requested. (AR-776.)

The Plan lists IVF as a covered service, but with the caveat that IVF procedures "will only be considered COVERED SERVICES for MEMBERS with infertility." (AR-780.)  The Plan further clarifies this position by stating specifically that fertility services are excluded for those members who do not meet the definition of infertility. (AR-803.)  The Plan's Infertility Guideline further articulates the requirements for IVF services.  This Guideline requires: (1) a diagnosis of infertility; (2) a demonstrated likelihood of success defined as a live birth rate of at least 5%; (3) infertility must be caused by disease rather than age; and (4) for each IVF cycle that has previously been attempted at least three embryos were successfully transferred to the uterus. (AR-281-83.)

Through two rounds of internal appeals and one outside appeal, Tufts denied Plaintiffs' claim for several reasons including: (1) that Mrs. Ho-Rath did not meet the requirement of infertility based on disease; (2) that Mrs. Ho-Rath was infertile due to age; and (3) that unsuccessful prior attempts

8

at IVF precluded coverage.[5]  All of these rationales are reasoned and supported by substantial evidence.  Indeed, Plaintiffs never allege that Mrs. Ho-Rath is infertile based on disease or otherwise meets the Plan guidelines.[6]  Therefore, the denial of IVF by Tufts was not an abuse of discretion.

Eligibility determinations for PGD are made separately from decisions about IVF.  (AR-294.)  Approval for PGD service does not necessarily mean a member will be approved for IVF service.  (AR-294.)  The PGD Guideline provides for PGD determinations with respect to identifying whether an embryo is afflicted with Thalassemia.  (A-295.)  In addition, the Plan permits HLA typing to determine if two people are a bone marrow match.  (AR-782.)  But the PGD Guideline expressly does not cover PGD for the purpose of HLA typing.  (AR-295.)  Plaintiffs argue that PGD for the purpose of HLA typing is based on scientific evidence, and should be permitted because the Plan defines "MEDICALLY NECESSARY" to include "services and interventions not in widespread use, as based on scientific evidence."  (AR-828.)

---

[5] During a hearing on the cross-motions for summary judgment, Plaintiffs noted that the appeal denial letter from Maximus states that Plaintiff Jean Ho-Rath is now infertile. Maximus made this infertility determination based on age.  The Infertility Guideline requires a diagnosis of infertility to be based on disease, not age, to be eligible for IVF procedures.

[6] In fact, Plaintiffs admit Mrs. Ho-Rath does not meet these infertility requirements.  (Pls.' Mem. in Supp. of Their Objection and Cross-Mot. for Summ. J. 13.)

Even were the Court to agree with Plaintiffs that PGD for the purpose of HLA could be deemed medically necessary, PGD services are not permitted for this purpose applying the plain language of the PGD Guideline.  Plaintiffs have requested this service for the exact reason not permitted by the Plan, and thus denial of this service was not an abuse of discretion by Tufts.

    B.    Tufts's Case Management Procedures

Next, Plaintiffs argue that Tufts abused its discretion in failing to include Y.H. in two discretionary case management programs.  In its Plan, Tufts established two special case management programs – Individual Case Management ("ICM") and Special Case Management ("SCM").  Plaintiffs try to establish an entitlement under the Plan's SCM and ICM programs, and argue that by not including Y.H. in these programs, Tufts showed its abuse of discretion.  This argument also fails.

The SCM provides that "some MEMBERS with Severe Illnesses or Injuries may warrant case management intervention under our specialty case management program."  (AR-769.)  Plaintiffs suggest some underhanded purpose in the fact that this program was included in order for Tufts' to manage its own costs. Plaintiffs, however, ignore the plain terms of the plan which provide that only "COVERED SERVICES" were permitted under the SCM.  (AR-769.)  As discussed in Section III. A., <u>supra</u>, IVF was not a covered service under this Plan and these circumstances,

10

and thus Tufts did not abuse its discretion by not including Y.H. in the SCM program.

Tufts members with a severe illness or injury may be eligible for a different program. The ICM program was "designed to arrange for the most appropriate type, level, and setting of health care services and supplies." (AR-770.) Under the program, non-covered services that are less costly than covered services may be available. Defendant readily admits that sometimes non-covered services are available in an ICM, but correctly notes that the non-covered service must be provided "directly to the MEMBER with the condition." (AR-770.) There is no question that, while the IVF and other procedures requested were for Y.H.'s benefit, they would not be provided directly to her, but instead would be provided to her mother. Therefore, Tufts's decision not to include Y.H. in the ICM program does not suggest an abuse of discretion.

    C.    Tufts Discussions with the Department of Health

Plaintiffs argue that Tufts impermissibly spoke to the DOH following the second instance where Maximus overturned Defendant's decision on appeal in April 2011. This interaction, Plaintiffs allege, had a "chilling" effect, which evidences Tufts's abuse of discretion. The facts surrounding the communication between Tufts and DOH dispel any notion that Tufts acted inappropriately.

The letter from Maximus to the Ho-Raths' stating they had been successful in their appeal contains a sentence inviting them to call DOH if they had any questions. (AR-526.) Tufts was carbon copied on the letter, and read it as suggesting that it too could call DOH with any questions. A Tufts employee called the DOH and left a message. (Decl. of Libby Hanrahan ¶ 4, ECF No. 45-2). DOH eventually returned this message and requested a conference call with Tufts. (Id. at ¶ 5.) During that call, DOH revealed that it had asked Maximus to conduct a quality review of the Ho-Raths' case, and that after doing so, Maximus agreed its reviewer had not applied the Plan coverage criteria as required by state law. (Id.) There is no evidence that Tufts attempted to improperly influence the DOH or Maximus in coming to this decision. Thus, this interaction simply does not establish that Tufts abused its discretion in handling the Ho-Rath case.

D.   Res Judicata

Finally, Plaintiffs argue that the November 2010 and April 2011 decisions by Maximus should have res judicata effect. This argument, raised for the first time in a supplemental memorandum of law filed just days before a hearing on the cross-motions for summary judgment, is unpersuasive. Decisions of administrative appeals agents may have res judicata effect. See Schoen v. Presbyterian Health Plan, Inc., Nos. Civ. 08-0687 JOB/WDS, 08-

12

0970 JOB/WDS, 2009 WL 1299680, at *9 (D.N.M. Feb. 19, 2009). The November 2010 decision by Maximus has no bearing on the question of IVF, because it only involved PGD. (AR-610-12.) The April 2011 decision was the subject of review by DOH and an internal quality control review by Maximus as discussed supra in Section III. C. After this review revealed that Maximus had not based its decision on all of the elements required for external review, the DOH determined that this decision would not be precedential for future benefits determinations in the Ho-Raths' case. (Pls.' Mem. in Supp. of Their Objection and Cross-Mot. for Summ. J., Ex. 32.) Thus, the decision simply has no bearing on the dispute currently before the Court.

Even if the earlier decision was precedential, Plaintiffs would not succeed with this argument. Res judicata "operates to bar the relitigation of issues that were or could have been raised in an earlier action between the same parties prescinding from the same set of operative facts." Carvalho v. Fed. Nat'l Mortg. Ass'n (In re Carvalho), 335 F.3d 45, 49 (1st Cir. 2003). This case does not flow from the same operative facts as the earlier decisions by Maximus. The Plan requires that requests for IVF be reviewed anew each time, taking into account the success of the prior attempt and the likelihood an IVF treatment would be successful. If a prior attempt fails to achieve a certain level of success, a new round of IVF will not be

13

approved, according to the clear terms of the Infertility Guideline. (AR-281-83.) Here, the denial of the Ho-Raths' request was premised in part on failed earlier IVF attempts and the belief that age and other factors made the likelihood of success less than 5%. Were Maximus's decision to have the impact Plaintiffs attach to it, the requirements regarding consideration of earlier attempts and likelihood of success would be nullities. Because this denial represents a distinct set of operative facts, res judicata does not bind this Court's determination.

IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
United States District Judge
Date:  October 31, 2013